

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| WILLIAM MICHAEL SKINNER, JR., MITCH ROWELL, and LAURENCE H. FLANEGAN, <br> Plaintiffs, <br><br> vs. <br><br> GATEWAY MORTGAGE GROUP, LLC, J. KEVIN STITT, and DANE BASHAM, <br> Defendants. | § § § § § § § § § § § | CIVIL ACTION NO. 3:13-02924-MGL |

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

I.  **INTRODUCTION**

Plaintiffs William Michael Skinner, Jr. (Skinner), Mitch Rowell (Rowell), and Laurence H. Flanegan (Flanegan) (collectively, Plaintiffs) filed this lawsuit alleging claims for (1) violation of the South Carolina Payment of Wages Act (SCPWA), S.C. Code Ann. § 41-10-10; (2) breach of contract; (3) breach of contract accompanied by fraudulent act; (4) violation of the South Carolina Unfair Trade Practices Act (SCUTPA), S.C. Code Ann. § 39-5-10; and (5) breach of the implied covenant of good faith and fair dealing. As an alternative to their SCPWA cause of action, Plaintiffs seek relief under the South Carolina Payment of Post-Termination Claims to Sales Representatives Act (Sales Representative Act), S.C. Code Ann. § 39-65-10. Plaintiffs request treble and punitive damages in addition to compensatory damages and costs.

The Court has jurisdiction over the matter under 28 U.S.C. § 1332. Pending before the

Court is Defendants Gateway Mortgage Group, LLC (Gateway), J. Kevin Stitt (Stitt), and Dane Basham's (Basham) (collectively, Defendants) motion for partial summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Having carefully considered the motion, response, reply, oral argument, the record, and the applicable law, it is the judgment of the Court Defendants' motion for partial summary judgment will be granted in part and denied in part.

II.    **FACTUAL AND PROCEDURAL HISTORY**

Gateway is a home-mortgage lender with operations in South Carolina. Plaintiffs were all previously employed by Gateway in South Carolina as licensed loan originators. Upon their hiring, each Plaintiff executed an employment and compensation agreement with Gateway setting forth job duties, terms and conditions for payment of compensation, and certain grounds for termination.

In addition to serving as a licensed loan originator, Skinner managed Gateway Branch 670. His initial agreement—executed some time prior to April 2011—contained specific language providing he would receive compensation based on the profitability of Branch 670. Under that agreement, Skinner had great discretion over the profits generated by the Branch, which were deposited in a Branch Manager Liability Account (BMLA), and which Skinner could then use to pay operating expenses, or to increase compensation for himself or other loan officers.

In April 2011, Gateway held a conference call with its branch managers, including Skinner, and informed them their compensation would be governed by new agreements in supposed compliance with the Dodd-Frank Act and its interpreting regulations regarding loan officer compensation. Shortly thereafter, Skinner entered in to a new Branch Manager Agreement in purported compliance with the Dodd-Frank requirements. Skinner's April 2011 compensation

2

plan defined his compensation as a $3,500.00 monthly base salary, commissions based on the total monthly volume of loans closed at Branch 670, and an annual production bonus. Skinner's April 2011 agreement expressly stated, "Branch Manager will NOT be allowed to participate in bottom line profitability." ECF No. 73-3 at 59.

At about the same time, the Branch's profits earned up to April 1, 2011 were moved into the BMLA from which Skinner could request payment at his discretion until the funds were exhausted. As of April 30, 2011, the account had a balance of $40,034.58. After the Dodd-Frank Act changes, no additional funds were added to the account. In an email on May 15, 2012, Skinner acknowledged the money in his liability account was "about tapped out." *See id.* at 65. By May 31, 2012, records indicate the BMLA had a zero balance. *Id*. at 71-72.

In April 2012, Skinner signed a third compensation plan, under which his monthly base salary increased to $8,500.00, and he continued to receive commissions based on the total monthly volume of loans closed at Branch 670. From this point forward, Skinner would meet with Basham, then Regional Vice President responsible for Branch 670, and/or then Chief Operating Officer Steve Peters (Peters) every ninety days to reevaluate his compensation plan. Skinner testified the salary and commission components of his compensation structure were either increased or decreased depending on branch performance. Defendants state Skinner's compensation plan would be adjusted to increase his salary and/or commissions to be paid prospectively or, in other words, in the future ninety days.

Skinner entered into a fourth compensation plan in July 2012, which increased his base monthly salary to $20,000.00, and added to the commissions he could receive based on the volume of loans closed at Branch 670. This plan, like his second one, notably provided Skinner would be unable to participate in the "*bottom line profitability*" of the branch. *See id.* at 61.

3

Skinner then entered into a fifth compensation plan on October 1, 2012. This plan continued to furnish Skinner with a base monthly salary and commissions based on the total volume of loans closed at Branch 670, and it further entitled him to commissions for loans he personally originated. This plan also stated Skinner would "NOT be allowed to participate in *bottom line profitability*." *Id.* at 62. Skinner remained under this compensation plan until his termination on October 17, 2012.

In October 2012, Gateway decided to close Branch 670 among concerns Skinner had allegedly engaged in a number of questionable business practices. Purportedly for those same reasons, Gateway terminated Skinner's employment on October 17, 2012. Gateway insists at no point did Basham or anyone else associated with Gateway promise Skinner it would pay him an amount equivalent to the profits remaining after his termination or upon the closing of Branch 670. Instead, Skinner would purportedly be entitled to be paid only in accordance with the terms of his compensation plans. Further, Gateway argues it overpaid Skinner by $12,786.90 in 2011 and by $6,327.23 in 2012.

Because Gateway anticipated closing Branch 670, it also terminated Rowell on October 17, 2012. Gateway continued to employ Flanegan, though, to work with the administrative processors at Branch 670 to process and close any outstanding loans that were in the pipeline and to assist with winding down the operations of Branch 670. At the time of Skinner's and Rowell's terminations, Gateway indicated it intended to pay Plaintiffs commissions for loans they had originated during their employment and that closed within thirty days after their termination.

On November 9, 2012, Flanegan asked Basham if he and the other Plaintiffs would receive commissions for loans that closed before the end of November, 2012. After obtaining Peters' approval, Gateway agreed to make an exception to the thirty-day deadline and pay Plaintiffs

4

commissions for loans that closed before November 30, 2012.

During the wind-down of Branch 670, however, Gateway discovered it was losing money on a number of loans originated by Plaintiffs. Peters contacted Basham and asked if he realized the loans originated out of Branch 670 had been locked at harmful terms. Basham had not. Peters instructed him to contact Flanegan regarding the problem.

Basham contacted Flanegan about the harmful loans. Based on Basham's alleged conversation with Flanegan, Gateway determined Plaintiffs would no longer be entitled to commissions on those loans because Plaintiffs' behavior purportedly violated their obligations under their agreements with Gateway. Consequently, Gateway terminated Flanegan's employment on November 14, 2012.

Gateway ultimately decided Plaintiffs were working together to harm Gateway. Gateway contends it suffered $54,273.82 in damages as a result of the loans closed at Branch 670 after it informed Plaintiffs of the anticipated branch closure. Gateway subsequently advised Plaintiffs it would refrain from paying commissions on loans that closed after their respective termination dates. Stitt, Gateway's President and Chief Executive Officer, reiterated this decision in a letter to Skinner dated December 20, 2012, explaining Skinner was unentitled to commissions for loans that closed after his termination because he allegedly failed to act in good faith and in Gateway's best interests.

Plaintiffs originally filed this lawsuit in the Richland County, South Carolina Court of Common Pleas. ECF No. 1-1 at 2. Defendant Gateway, then the sole Defendant, removed the case to this Court. ECF No. 1. Plaintiffs then filed an Amended Complaint in this action. Thereafter, Defendants filed a motion for partial summary judgment, wherein they seek summary judgment on the following claims: (1) Skinner's claims for violation of the SCPWA, breach of

contract, breach of contract accompanied by fraudulent act, violation of the SCUTPA, and breach of the implied covenant of good faith and fair dealing related to Skinner's entitlement to branch profitability; (2) Skinner's request for treble damages under the SCPWA and for punitive damages under breach of contract with fraudulent act and breach of the implied covenant of good faith and fair dealing related to Skinner's claim he is due commissions for loans closed by other Plaintiffs at Branch 670; and (3) all claims asserted by Plaintiffs against Basham in his individual capacity. ECF No. 73. Plaintiffs thereafter filed their response in opposition, ECF No. 85, and Defendants replied, ECF No. 86. The Court then held a hearing on Defendants' motion. Having been fully briefed on the relevant issues, the Court is now prepared to discuss the merits of the motion.

## III. STANDARD OF REVIEW

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding whether a genuine issue of material fact exists, the evidence of the non-moving party is to be believed, and all justifiable inferences must be drawn in his favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The moving party has the burden of proving summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing there is a genuine issue for trial. *See* Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

A party asserting a fact is genuinely disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the

motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). A litigant "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). Therefore, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995).

"[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1996). "Summary judgment is proper only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

### IV. CONTENTIONS OF THE PARTIES

In Defendants' motion for partial summary judgment, they first allege Skinner's claims for violation of the SCPWA, breach of contract, breach of contract accompanied by fraudulent act, and breach of the implied covenant of good faith and fair dealing fail as a matter of law due to the absence of a contract or promise to pay profits generated by Branch 670 in 2011 and 2012. Even if, however, Skinner could establish a contractual promise concerning the payment of profits, Defendants aver such an arrangement violates the Dodd-Frank Act and is thus unenforceable. Defendants further contend Skinner is unentitled to treble or punitive damages because an honest, good faith dispute existed as to whether compensation was due. Defendants additionally aver

Plaintiffs' SCUTPA claim fails as a matter of law. Finally, Defendants argue Basham is entitled to summary judgment on Plaintiffs' claims against him in his individual capacity because there is no evidence satisfying the standard for personal liability under the SCPWA, and Basham was not a party to any contract with Plaintiffs.

In their Response, Plaintiffs dispute most of these assertions. Plaintiffs concede, however, their SCUTPA claim should be withdrawn, along with their alternative cause of action under the Sales Representative Act.

At the hearing on this matter, Plaintiffs agreed Skinner failed to have a contractual claim based on bottom line profitability after he signed the April 2011 addendum to his contract, which excluded him from bottom line profitability. Rather, Plaintiffs argued Skinner's bottom line profitability claim fell under SCPWA, was in the amount of approximately $190,000, and was based upon entitlement to profitability earned before he signed the April 2011 addendum. Plaintiffs also conceded their breach of contract with fraudulent act claim substantively appeared to be a fraudulent inducement claim. A fraudulent inducement claim would create a cause of action for rescission, but Plaintiffs pled a breach of contract claim. Plaintiffs agreed they were unable to affirm the contract and sue for breach while at the same time bringing a claim for rescission.

V. **DISCUSSION AND ANALYSIS**

As an initial matter, under South Carolina law, "the implied covenant of good faith and fair dealing is not an independent cause of action separate from the claim for breach of contract." *RoTec Servs., Inc. v. Encompass Servs., Inc.* 594 S.E. 2d 881, 884 (S.C. Ct. App. 2004). Rather, the cause of action for breach of the implied covenant of good faith and fair dealing is subsumed

under the breach of contract claim. *Id.* at 883. The implied covenant of good faith and fair dealing is "another term of the contract at issue," and is "implied in every contract." *Id.* at 884. For this reason, the Court will dismiss Plaintiffs' cause of action for breach of the implied covenant of good faith and fair dealing as to all Defendants. The Court notes, however, that the breach of the implied covenant of good faith and fair dealing claim may be part of Plaintiffs' cause of action for breach of contract, especially given Plaintiffs' Amended Complaint, ECF No. 38, which provides much the same basis for Plaintiff's breach of the implied covenant and breach of contract causes of action. Plaintiffs' cause of action for breach of contract, and therefore any subsumed claim for breach of the implied covenant of good faith and fair dealing, will be analyzed below. Because the Court will dismiss Plaintiffs' independent cause of action for breach of the implied covenant of good faith and fair dealing, it will also dismiss Plaintiffs' claim for punitive damages for breach of the implied covenant of good faith and fair dealing.

Inasmuch as Plaintiffs have conceded their SCUTPA claim, alternative cause of action under the Sales Representative Act, claim for breach of contract with fraudulent act, and Skinner's contractual claims based on bottom line profitability after the April 2011 addendum to his employment contract, the Court will grant summary judgment as to those claims. Because the Court will grant summary judgment to Defendants on Skinner's claim for breach of contract with fraudulent act, the Court will also grant Defendants summary judgment on Skinner's claim he is entitled to punitive damages based on breach with fraudulent act.

Moreover, in Plaintiffs' response in opposition to Defendants' motion and at the hearing, Plaintiffs failed to address or provide any arguments in response to Defendants' argument Basham was not a party to any contract with Plaintiffs and, therefore, is entitled to summary judgment in his individual capacity on all contract-based claims asserted by Plaintiffs. In light of Plaintiffs'

9

failure to contest Defendants' arguments on this issue, the Court determines Defendants' arguments and the supporting facts are undisputed and, thus, summary judgment is proper. *See Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396 n.\* (4th Cir. 2014) (noting a failure to present a legal argument waives that argument). Accordingly, the Court will grant Defendants' motion for partial summary judgment as to Plaintiffs' claims against Basham in his individual capacity for breach of contract.

With that preliminary analysis complete, the following claims remain for the Court to analyze: (1) Skinner's SCPWA and breach of contract claims as to entitlement to profitability that accrued before Skinner signed the April 2011 addendum; (2) Skinner's SCPWA and breach of contract claims based upon entitlement to commissions; (3) Skinner's request for treble damages under the SCPWA; and (4) Plaintiffs' SCPWA claim against Basham in his individual capacity.

The SCPWA defines wages as "all amounts at which labor rendered is recompensed . . . which are due to an employee under any . . . employment contract." S.C. Code Ann. § 41-10-10(2). The SCPWA requires an employer to pay any wages due an employee within forty-eight hours after terminating the employee, or at the next regular payday, which may be no more than thirty days after the termination. S.C. Code Ann. § 41-10-50.

At the hearing, Skinner averred he had a SCPWA claim based on branch profitability earned before the April 2011 amendment to his contract. According to Skinner, the amount in dispute was approximately $190,000. However, the facts indicate the amount earned was closer to $40,000, and all of the $40,000 had been paid out by May 31, 2012. *See* ECF No. 73-3 at 29-30, 65-66, 71-72. At the hearing, Skinner claimed there should have been more money in the BMLA, but he conceded Plaintiffs found no evidence in Defendants' records the amount should have been higher.

Because the evidence indicates the $40,000 in branch profitability that accrued before the April 2011 amendment to Skinner's contract was paid out, there is no unpaid branch profitability. Thus, Skinner's SCPWA claim for branch profitability earned prior to April 2011 fails, and the Court will grant Defendants' motion for partial summary judgment as to this claim.

It is axiomatic for Skinner to bring a claim for breach of contract he must show Defendants somehow failed to meet their contractual obligations. As analyzed above, however, the evidence shows Defendants paid Skinner the full amount of branch profitability earned prior to April 2011. On that basis, the Court will grant Defendants' motion for partial summary judgment as to Skinner's claim for breach of contract regarding his claim for pre-April, 2011 branch profits.

Although the Court will grant Defendants' motion for partial summary judgment as to Skinner's SCPWA and breach of contract claims based upon his entitlement to branch profitability, it will decline to grant Defendants summary judgment on Skinner's SCPWA and breach of contract claims related to his entitlement to commissions. As a preliminary matter, Defendants neglected expressly to move for summary judgment on these claims. *See* ECF No. 73. Second, Defendants admitted at the hearing a dispute exists between the parties regarding whether Skinner was entitled to commissions, and if so, whether they were paid. As a result, the Court concludes summary judgment on Skinner's SCPWA and breach of contract claims related to commissions would be inappropriate at this stage, and will deny Defendants summary judgment on these claims.

The Court next turns to Defendants' argument Skinner's request for treble damages under SCPWA fails as a matter of law because an honest, good faith dispute existed as to whether compensation was due. Because the Court will grant summary judgment to Defendants on Skinner's SCPWA claim related to Skinner's right to profitability, it will also grant Defendants summary judgment as to the treble damages claim based on Skinner's entitlement to profitability.

11

However, as analyzed above, the Court will leave pending Skinner's SCPWA claim in relation to his entitlement to commissions. When viewing the facts in the light most favorable to Skinner, as the Court must, the Court holds Skinner has submitted sufficient evidence to create a genuine issue of material fact on the issue of treble damages under SCPWA related to his entitlement to commissions. Thus, the Court will deny summary judgment to Defendants on this claim.

Finally, the Court addresses Defendants' argument Basham is entitled to summary judgment on Plaintiffs' SCPWA claims against him in his individual capacity because Plaintiffs have failed to provide evidence satisfying the standard for personal liability under the SCPWA. The SCPWA defines employer as "every person, firm, partnership, association, corporation, receiver, or other officer of a court of this State, the State or any political subdivision thereof, and any agent or officer of the above classes employing any person in this State." S.C. Code Ann. § 41-10-10(1). Further, South Carolina courts interpreting the SCPWA have determined the legislature intended to impose individual liability on agents or officers who knowingly permitted their company to violate the SCPWA. *See Allen v. Pinnacle Healthcare Sys., LLC*, 715 S.E.2d 362, 365 (S.C. Ct. App. 2011) (citing *Dumas v. InfoSafe Corp.*, 463 S.E.2d 641, 645 (S.C. Ct. App. 1995)).

Because the Court will grant summary judgment to Defendants on Skinner's SCPWA claim related to profitability, it will also grant Defendants summary judgment as to Skinner's SCPWA claim against Basham based on Skinner's entitlement to profitability. Defendants argue there is no evidence Basham had the authority to make any decisions regarding the payment of wages or Basham knowingly permitted Gateway to allegedly violate the SCPWA. The Court is unable to agree. The Court is of the firm opinion Plaintiffs have proffered evidence to create a genuine issue of material fact as to whether Basham had the authority to make decisions regarding

12

the payment of wages and whether Basham knowingly permitted Gateway to allegedly violate the SCPWA. *See* ECF No. 85-16 at 1-2. Accordingly, the Court will deny Defendants' motion for partial summary judgment as to Plaintiffs' SCPWA claim against Basham based on commissions due.

## VI. CONCLUSION

Wherefore, based on the foregoing discussion and analysis, it is the judgment of this Court that Plaintiffs' independent cause of action for breach of the implied covenant of good faith and fair dealing, and their related claim for punitive damages based on breach of the implied covenant of good faith and fair dealing, are **DISMISSED** as to all Defendants.

Defendants' motion for partial summary judgment is **GRANTED IN PART AND DENIED IN PART**. Specifically, Defendants' motion is **GRANTED** as to Plaintiffs' SCUTPA claim against all Defendants, their alternative cause of action under the Sales Representative Act against all Defendants, their claim for breach of contract with fraudulent act against all Defendants, and Skinner's SCPWA and breach of contract claims related to his entitlement to branch profitability. Defendants' motion is likewise **GRANTED** as to Plaintiffs' breach of contract claim against Basham, and as to Skinner's SCPWA claim against Basham based on Skinner's entitlement to branch profitability. Finally, Defendants' motion is **GRANTED** as to Skinner's claim for punitive damages related to breach of contract with fraudulent act, and as to his claim for treble damages based upon his entitlement to profitability. Defendants' motion is **DENIED** as to Skinner's claims under SCPWA and breach of contract in relation to his entitlement to commissions, and as to Plaintiffs' remaining SCPWA claims against Basham. Defendants' motion is also **DENIED** as to Skinner's claim for treble damages in relation to his entitlement to

commissions.

Not later than Wednesday, November 1, 2017, the parties shall submit to the Court a proposed joint consent amended scheduling order, which shall contain a mediation deadline and shall list February 13, 2018 as the date the case may be called for jury selection and trial.

**IT IS SO ORDERED**.

Signed this 23rd day of October, 2017, in Columbia, South Carolina.

                                              s/ Mary Geiger Lewis
                                              MARY GEIGER LEWIS
                                              UNITED STATES DISTRICT JUDGE